**In re WILSON.**

**WILSON v. LOUISVILLE JOINT STOCK LAND BANK OF LOUISVILLE, KY.**

**SAME v. LOUISVILLE JOINT STOCK LAND BANK OF LOUISVILLE, KY., et al.**

**Nos. 6897, 6898.**

Circuit Court of Appeals, Seventh Circuit.

June 12, 1939.

Rehearing Denied July 13, 1939.

Samuel E. Cook, of Huntington, Ind., for appellant.

William W. Seagle, of Indianapolis, Ind., for appellees.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

Appellant, a farmer-debtor, appeals from two orders of the District Court in a proceeding under section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203:

1. Entered January 14, 1939, directing the appointment of a trustee of his estate; ordering the surrender of possession of his farm; dissolving an injunction there-

tofore entered to prevent the sheriff from delivering his deed to the farm; and directing the marshal to remove the debtor from the property and put the purchaser in possession upon presentation of the deed to the property.

2. Entered January 19, 1939, denying appellant's petition for appraisement of his farm and for an injunction to restrain the sheriff from executing and delivering the deed to it and removing him from it.

Foreclosure proceedings were instituted by appellee in July, 1932, on the real estate here involved, default having occurred in payments due under the mortgage January 1, 1930. Because of change of venue and change of Judge, the foreclosure proceedings were so delayed that decree was not entered until April, 1936, followed by sale of the property May 23, 1936. At the same time a mechanic's lien was foreclosed by cross complaint filed in the mortgage foreclosure proceedings, and to avoid removal of the chicken house there involved from the premises, appellee settled with the lience by payment of $500. During the pendency of these proceedings appellant had instituted proceedings under section 75 which were ultimately dismissed. On May 20, 1937, appellant filed the debtor proceedings here involved, and obtained an injunction restraining the sheriff from executing and delivering the deed. On August 26, 1937, the conciliation commissioner entered an order providing for the rental of the eighty-acre farm to the debtor for $250 for the period ending December 1, 1938. The rental was to be paid in three installments of $50 on or before November 1, 1937, $75 on or before May 1, 1938, and $125 on or before November 1, 1938. The order further provided that the debtor should work the farm in proper manner, in accordance with the practices of good husbandry; that no waste should be committed; that the buildings, fences and other improvements should be kept in as good a state of repair as they then were in; appointed a trustee who was to collect the rents from the debtor who was permitted to occupy the premises; and stayed all proceedings against the debtor during such time as he complied with all the provisions of the order.

On November 15, 1938, fifteen days after the final installment of rent was due, appellee filed its petition before the commissioner setting up, inter alia, the facts that appellant had paid only $60 of the total of $250 rent provided by the order under which he was permitted to remain in possession of the farm; that he had paid no taxes since 1930; that appellee had to keep up insurance on the improvements since the debtor failed to do so; that the debtor did not have the necessary equipment or stock with which to farm the land properly and had cultivated only a small part of it, producing practically nothing on it; and that he would not be able to refinance his debt within three years, nor had his proceeding been filed in good faith, but only for the purpose of retaining possession of the real estate. Appellee also showed that the rent actually paid during the two farming seasons included in the period was less than the amount of taxes levied against the land for the two years. Appellee therefore prayed that the real estate be released from the bankruptcy proceeding and that the debtor be granted no further right to occupy the land after December 1, 1938 (the expiration of the period of the lease of August 26, 1937).

By the time of the hearing before the commissioner on appellee's petition, the debtor had paid an additional $90 on the rent, leaving a balance due and unpaid of $100 which remained due and unpaid until the day before hearing in this court, April 21, 1939. The commissioner found that the debtor had made no repairs or improvements on the property, paid no taxes, had only planted a few acres of the land in corn, and that not until July, so that it grew only about half the normal height and made no ears; that the debtor would not be able to rehabilitate himself and would not be able to repurchase the land. He therefore recommended that the debtor surrender possession of the property immediately, and that appellee cancel its claim for the balance of $100 due on the rent for any work done on the place; that a successor trustee be appointed and the estate be administered under the Bankruptcy Act.

Upon hearing on appellant's petition for review of the report of the commissioner, a continuance for which was prayed by appellant and denied by the court, the court adopted the recommendations of the commissioner and entered the order from which the first appeal is taken, that the debtor surrender possession, and the sheriff proceed with the execution and delivery of the deed and the marshal with the removal of the debtor from the premises. A few

days later, the debtor filed his petition for appraisement of the property and an order restraining the sheriff from executing and delivering the deed, and the marshal from removing him from the premises, and that the court proceed with the administration of the proceeding in bankruptcy, all of which was denied by the court by the second order from which appeal was taken.

Upon hearing of the cause by this court on April 21, appellant sought to present to us certain affidavits to prove that on April 20, $100 had been tendered to the commissioner in payment of the final installment on the rent due November 1, 1938, for the period ending December 1, 1938. The $100 constituted part of the proceeds of a check for $103.76 issued to appellant for soil conservation. Appellant had previously attempted to assign his claim to this check to the commissioner, but the Conservation Committee had refused to recognize the assignment for the reason that it was contrary to regulations promulgated under the Act which provided for assignment of such claims only to pay or secure an indebtedness incurred in financing a crop in 1938, and not for any preexisting indebtedness, quoting from N. C. R.—201 for the 1938 Agricultural Conservation Program.

We are of opinion that the tender on April 20, 1939, of payment of rent due November 1, 1938, for a period ending December 1, 1938, in no way militates against the validity of an order entered January 14, terminating the debtor proceeding for failure to comply with the terms and conditions of the order of August, 1937, under which the debtor was permitted to remain in possession of the foreclosed premises. Not only was the full amount of rent not paid, which failure cannot be excused by tender almost six months after it became due, but also, there was convincing evidence that the debtor was not farming the land in a manner conducive to good husbandry, nor was he making any attempt to keep improvements on the farm in any kind of repair, as was also required by the order under which he retained possession.

The record also discloses convincing evidence that the debtor was not a good subject for rehabilitation, and that there was no likelihood that he would be in any better financial position at the end of three years than he was when the order was entered. Appellant's conception of section 75

(s) of the Bankruptcy Act, 11 U.S.C.A. § 203 (s), appears to be that it confers upon a farmer-debtor an absolute right to retain possession of his farm until March 4, 1940. He contends that he is under no duty to disclose any plans for rehabilitation until that time, and that the question of feasibility of rehabilitation need not be raised until then. We do not so understand the Act. It is clear from the opinion of the Supreme Court in Wright v. Vinton Branch Bank, 300 U.S. 440, 57 S.Ct. 556, 561, 81 L.Ed. 736, 112 A.L.R. 1455, that the stay provided for by the Act is not an absolute one, but that it may be terminated earlier than the expiration of the three year period. The Court there called attention to the fact that the debtor's tenure under the stay is subject to the requirement that he pay a reasonable rental, and that while he remains in possession of the property it is at all times subject to the supervision and control of the court which may order the property sold if he defaults in his obligations. The Court also construed the provision of the statute "if * * * the debtor at any time * * * is unable to refinance himself within three years" the court may close the proceedings by selling the property, to mean that the court may terminate the stay if after a reasonable time it becomes evident that there is no reasonable hope that the debtor can rehabilitate himself within the three-year period. We think there is an abundance of evidence in this record to indicate that the debtor was not complying with the terms and conditions of the order under which he was allowed to retain possession of the property, as well as that there was no reasonable hope that he would be in a position at the end of the three years to rehabilitate himself. Under those circumstances there was no error in the action of the court in terminating the debtor proceedings and permitting the appellee to proceed under rights acquired by it in the sale under foreclosure proceedings in May, 1936. Barton v. Gehman, 3 Cir., 91 F.2d 548; Cowherd v. Phoenix Joint Stock Land Bank, 8 Cir., 99 F.2d 225; Donald v. San Antonio Bank, 5 Cir., 100 F.2d 312; In re Henderson, 5 Cir., 100 F.2d 820; Bender v. Federal Farm Mortgage Corp., 8 Cir., 99 F.2d 252; Wilson v. Alliance Life Insurance Co., 5 Cir., 102 F.2d 365.

There was also no error in the action of the District Court in denying appellant's petition for appraisement of the

farm in question. Subsection (s) provides that upon failure of the debtor's attempt at composition or extension of his debts, he may amend his petition asking to be adjudged a bankrupt, at which time, or at the time of the first hearing, he may petition the court that all of his property, wherever located, whether pledged, encumbered or unencumbered, be appraised, and that he be allowed to retain possession of it under the control of the court, and also under the terms and conditions set forth in the section. Section 75 (s) (3) then provides that at the end of three years, or prior thereto, the debtor may pay into court the amount of the appraisal, provided that upon the request of the creditor or the debtor, the court shall cause a reappraisal, or upon hearing, fix the value of the property, which amount the debtor may pay into court, and provided further that upon request of the creditor the court shall order the property sold at public sale, from which sale the debtor may have 90 days to redeem the property. We do not understand that these provisions of the statute confer upon the debtor a right after the debtor proceeding has been validly terminated under proper orders of the court, to reopen those proceedings by his petition for appraisement, particularly where sale has been had under foreclosure proceedings, which fixed the amount to be paid for redemption during a period fixed by state statute but extended by virtue of Congressional enactment.

The orders of the District Court are affirmed.